JOHNSON, Respondent, vs. BLUMER, Respondent, and KEL-
· LER, Appellant.

*January 16—April 8, 1924.*

*Mortgages: Foreclosure: Estoppel: Principal and agent: Failure
to inform subsequent purchaser of land of mortgage: Laches:
Agent acting for adverse interests: What knowledge imputed
to principal: Covenants: Damages on breach: Interest rate
after judgment.*

1. Where the principal issue presented by the pleadings involved
   questions·of estoppel, laches, and waiver or acquiescence, the
   court should make and file findings on them; but where as a ·
   matter of law the plaintiff was not chargeable with knowledge
   which would preclude relief on any of the grounds claimed,
   failure of the court to make and file full findings does not
   constitute prejudicial error.   p. 376.
2. The successor in interest of a mortgagee is not estopped to assert
   his mortgage because of failure of the mortgagee or his agent
   to notify purchasers of the mortgagor of the existence of the
   mortgage, where he did not know of the sale, and the knowl-
   edge of such sale by his agent was acquired while representing
   an adverse interest, the knowledge of the agent not being .
   imputable to the mortgagee.   p. 376.
3. Where a mortgage was executed in 1907 payable in five years,
   and in 1911 the mortgagor conveyed the land to others .who
   had no knowledge of the existence of the prior mortgage, and
   the mortgagee had no actual or constructive notice of the
   breach of. warranty by the mortgagor until after the death of
   the mortgagor,. the defense of laches cannot prevail in an
   action to foreclose the mortgage.   p. 377.
4. Upon foreclosure of a mortgage the judgment should, under sec.
   3164, Stats., bear interest at the rate provided in the notes
   secured by the mortgage.   p. 377.
5. An executor's title to personal property differs in many respects
   from that held by an absolute owner, the executor holding
   his title not in his own right but pursuant to nomination in
   the will and his appointment by the court, and primarily for
   administration purposes.   p. 375.
6. Where the answer to a cross-complaint based on breach of cov-
   enants of warranty presented an equitable issue of reforma-
   tion on the ground of mistake, a finding of no mistake entitled
   the cross-complainant to a recovery of damages as a matter

of law, and, since no issue of fact as to damages was pre-
sented, there was no error in refusing to submit such issue
to a jury.    p. 378.

7. The rule that a cause of action for substantial damages for
breach of a covenant of warranty does not accrue to one who
has obtained title to property by warranty deed, where such
breach is made to appear, until he has been evicted or has
paid the mortgage, is founded on the possibility of the mort-
gagee recovering on the personal covenant of the mortgagor,
and does not apply where the original mortgagor died insolv-
ent and his estate had been distributed and the possibility
of enforcing payment on his personal covenant no longer
exists.    p. 378.

*On rehearing.*

8. A principal is not charged with the knowledge of an agent who
acts in a dual capacity and acquires such knowledge while
representing adverse interests.    p. 381.

ESCHWEILER, J., dissents.

APPEAL from a judgment of the circuit court for Green
county: GEORGE GRIMM, Circuit Judge.    *Modified and af-
firmed.*

This is an appeal from a judgment of foreclosure, such
judgment also providing that, upon the payment by the de-
fendant *Blumer* of the amount of the foreclosure judgment
and interest, judgment be rendered against the defendant
*Keller* for the amount so paid by him.

In 1907 one Dahms executed to one William Johnson two
notes, one for $3,100 and the other for $1,400, payable in
five years, with interest at the rate of five and one-half per
cent. per annum, payable annually, unpaid interest when due
to become principal and draw interest at the rate aforesaid,
and these notes were secured by a mortgage upon eighty
acres of land in Green county, which mortgage was duly
recorded immediately after its execution.    The mortgage
was drawn by one Durst, the cashier of the Citizens Bank
of Monroe, and the same, with the notes, was retained by
him and held for the mortgagee for collection of interest
until the spring of 1913, when the mortgagee died, and
thereafter Durst was appointed as the executor of his estate,

and upon the conclusion of the probate proceedings such executor duly assigned the same to the plaintiff.

On February 28, 1911, Dahms conveyed said eighty acres, together with another tract of eighty-five acres, by warranty deed to *Keller* for the sum of $20,200, and part of this consideration was paid in cash and the balance was evidenced by a note for $17,700, secured by a mortgage, which was duly recorded on the date of its execution; and thereafter Dahms, being heavily indebted to said bank, turned over the said $17,700 note and mortgage to said Durst as such cashier, as collateral to his indebtedness to the bank.

On February 5, 1912, *Keller* sold by land contract, to the defendant *Blumer,* the eighty acres in question, together with an additional thirty-two-acre tract, for the sum of $15,456, $500 being paid in cash, and the balance of $14,956 being payable on March 1, 1912, in accordance with the terms of said contract. On March 2, 1912, *Keller* and his wife executed and delivered to the defendant *Blumer* a warranty deed of the real estate described in said contract, and the latter executed and delivered to Dahms a note for the sum of $12,500, secured by a real-estate mortgage upon the property transferred, which note and mortgage were accepted by Dahms and applied by him in part discharge of the said $17,700 mortgage, and upon the receipt of said $12,500 note and mortgage the same were turned over to the said Durst as cashier as aforesaid as collateral security for the indebtedness of Dahms to the bank. Thereafter from time to time, up to April 6, 1914, *Blumer* made payments in various sums on his mortgage to Dahms, until the amount of the mortgage was reduced to the sum of $7,300, whereupon said $12,500 note and mortgage were, with the consent of the bank, before maturity, assigned to one Cornelius for value, who became an innocent purchaser thereof, and the bank, having surrendered the mortgage, obtained other satisfactory collateral from Dahms. In the mean-

time the defendant *Keller* had paid to Dahms the balance owing by him on the $17,700 note and mortgage, and such mortgage was thereafter duly released and discharged of record.

Dahms died in the fall of 1914, insolvent, and it appears from the record that the defendants *Blumer* and *Keller* then for the first time learned of the existence of plaintiff's mortgage; and it also appears that neither *Keller* nor *Blumer* had at any time prior to Dahms' death made an examination of the title of the eighty acres, nor did they obtain an abstract of the property conveyed to them. Up to the time of Dahms' death the interest on plaintiff's mortgage was paid by him to Durst at the bank, and neither *Keller* nor *Blumer,* up to that time, had been requested to pay such interest.

In his cross-complaint against the defendant *Keller* the defendant *Blumer* attempts to recover a judgment for the amount of the judgment of foreclosure, basing his right upon the breach of the covenant of warranty contained in the *Keller* deed. *Keller,* by way of reply to the cross-complaint, among other things alleges that he had no knowledge that the deed executed by him was a warranty deed; that it was agreed by him and *Blumer* that he was to execute a mere quitclaim deed, and that *Blumer* was to accept a full warranty deed from Dahms; and thereupon prayed for a reformation of his deed to *Blumer* in accordance with the allegations of his complaint. The court, however, found against the contention of the defendant *Keller* and adjudged him guilty of a breach of the covenant of warranty against incumbrances, and ordered judgment in *Blumer's* favor as above stated. The court also ordered judgment of foreclosure in plaintiff's favor in the usual form, and from the entry of judgment as above indicated the defendant *Keller* has prosecuted this appeal.

Further facts will be referred to in the opinion.

For the appellant there was a brief by *John M. Becker*

of Monroe and *Richmond, Jackman, Wilkie & Toebaas* of Madison, and oral argument by *Mr. Harold M. Wilkie* and *Mr. Becker*.

For the respondent *Blumer* there was a brief by *W. H. McGrath* of Monroe and *Jeffris, Mouat, Oestreich, Avery & Wood* of Janesville, and oral argument by *O. A. Oestreich*.

For the respondent *Johnson* there was a brief by *John D. Dunwiddie* of Monroe and *Sanborn, Blake & Aberg* of Madison, and oral argument by *Mr. John B. Sanborn* and *Mr. Dunwiddie*.

The following opinions were filed February 12, 1924:

DOERFLER, 'J. In the very able brief and argument of counsel for the defendant *Keller* they insist that plaintiff should be denied relief as prayed for in the complaint, upon the ground of estoppel. There is no pretense that Johnson, the mortgagee, or the plaintiff ever had any actual knowledge of the fraud committed by Dahms in the sale of the eighty acres to the defendant *Keller,* or with respect to any of the subsequent transactions, but it is strenuously contended that the facts and circumstances as disclosed by the record establish clearly knowledge on the part of Durst, the cashier of the bank, not only of the existence of the plaintiff's mortgage, but that he also knew of the sale from Dahms to *Keller* and the subsequent transactions in the premises, or, to say the least, that under the state of the record he must be charged with such knowledge as a matter of law, and being the agent of the mortgagee and the plaintiff, and the executor of the mortgagee's estate, the duty devolved upon him to notify the defendants of the existence of this mortgage so as to enable them to seasonably protect themselves, and, having failed to act or speak when it was his duty so to do, plaintiff should be estopped from obtaining the relief prayed for.

The situation presented is somewhat novel, and no parallel

case has been cited, and we must frankly confess that we have found none. It must be conceded that had the defendants, prior to the assignment of the *Blumer* mortgage by Dahms to Cornelius, received notice of the existence of the plaintiff's mortgage, an effective remedy would have been opened to them for their protection. From the time of the execution of plaintiff's mortgage up to the beginning of 1913, Durst, as cashier, unquestionably acted as the agent for the mortgagee in the collection of the interest, but while acting as such agent he also represented the bank as its cashier and discharged the duty of protecting the interests of the bank with respect to the indebtedness of Dahms to the bank. Durst was not the mortgagee's general agent, as his authority was limited to the collection of the interest on the notes and mortgage. On the other hand, he was one of the principal officers and a general agent of the bank, charged with the duty to further and promote the bank's interests. He was thus acting in a dual capacity, the effect of which, in law, would be the same as if these two agencies had been represented by two separate and distinct individuals.

"It is a fundamental principle in the law of agency that for information given an agent to be attributable to his principal the information must be imparted to the agent in the course of his agency." *Butler v. Michigan Mut. L. Ins. Co.* 184 N. Y. 337, 340, 77 N. E. 398; *Corrigan v. Bobbs-Merrill Co.* 228 N. Y. 58, 126 N. E. 260, 10 A. L. R. 662, 670.

In 2 Corp. Jur. p. 863, § 544, it is said:

"The rule that notice to an agent is notice to his principal is not applicable unless the notice has reference to business in which the agent is engaged under authority from the principal, and is pertinent to matters coming within that authority; and hence a principal is not affected with knowledge which the agent acquires while not acting in the course of his employment, or which relates to matters not within the scope of his authority, unless the agent actually communicates his information to the principal."

See, also, numerous cases cited under note 93 on page 864, among which will be found *Wells v. American Exp. Co.* 44 Wis. 342.

The rule last quoted from Corpus Juris is so well intrenched in the jurisprudence of this country as to require no further comment; and applying such rule to the case at bar, we conclude that Durst acted as the agent of the bank and obtained what knowledge he had during the years 1911 and 1912 and up to the time of the death of the mortgagee in the early part of 1913, when he received the mortgages of *Keller* and *Blumer* as collateral security to the indebtedness of Dahms to the bank, and when he collected the interest thereon, together with instalments of principal, and when he applied the same in the reduction of Dahms' indebtedness to the bank, in the course of such agency and not in the course of the agency for the mortgagee.

During the greater part of the year 1913 Durst acted as executor of the estate of the mortgagee, and counsel for *Keller* contend that in that capacity he held the legal title to the notes and mortgage in suit, and having knowledge of the breach of the covenant of warranty on the part of Dahms, and having failed to give notice to the defendants of his knowledge, plaintiff should be estopped from obtaining the relief prayed for in her complaint. The title to personal property held by an executor differs in many respects from that of an absolute owner. He holds this title not in his own right, but pursuant to his nomination as executor in the will and his appointment by the court. He holds the title primarily for administration purposes for the benefit first of creditors, and secondly for the benefit of those interested in the estate. As executor he is charged with the duties of a trustee, and upon the termination of his trust the property undisposed of and unliquidated passes to the persons entitled thereto, pursuant to the final decree of the county court. Thus we have another instance of Durst acting in a dual capacity. As executor of the estate

it was incumbent upon him to collect the interest on the notes and mortgage and the principal after it became due. While the notes fell due in 1912, prior to the death of the mortgagee, they were not liquidated, but on the close of the administration the executor assigned the same and the mortgage to the plaintiff, and it nowhere appears in the record that plaintiff objected thereto; on the contrary, we must assume that this was done with her consent. No knowledge of a breach of covenant in the warranty deeds referred to came to the executor while acting as the personal representative of the deceased. On the contrary, such knowledge as he received, if any, was revealed to him while acting as the agent of the bank, and therefore such knowledge is not chargeable to the estate or to the plaintiff herein. Had Durst during the period of his executorship made admissions of the breaches of covenant, such admissions could not be received against him or against the estate, where he derived such knowledge in the course of his agency for the bank. 22 Corp. Jur. p. 407, § 486. The same rule heretofore declared with respect to agency also applies to the period of time while Durst was acting as executor, and such knowledge, not having been communicated to the plaintiff, cannot be imputed to her nor bind her.

In its findings of fact the court in substance found all of the essential facts set forth in the complaint, but omitted to make or file any findings whatsoever on the subject of estoppel, laches, waiver, or acquiescence. This failure is all the more deplorable because the principal issue presented by the pleadings involved these questions. In view, however, of our holding that as a matter of law the information obtained by Durst as agent or executor was not chargeable to the mortgagee, his estate, or the plaintiff herein, the failure on the part of the court to make and file full findings does not constitute prejudicial error.

Counsel for defendant *Keller* contend that the plaintiff should be estopped in obtaining the relief prayed for by her,

for the reason that the mortgagee and plaintiff were guilty of laches. Having held that the mortgagee and the plaintiff had no actual or constructive notice of the breach of warranty of Dahms until after the latter's death, it follows that the defense of laches herein cannot prevail.

After the death of Dahms the defendant *Keller*, upon advice of counsel, filed a contingent claim for the amount of the plaintiff's notes and mortgage against the estate of Dahms, and from time to time during the administration of the estate *Keller* received dividends which were applied upon the principal and interest of plaintiff's two notes.

The judgment entered in plaintiff's favor provides that it shall bear interest at the rate of six per cent. per annum, which is contrary to the provisions of sec. 3164 of the Statutes, pursuant to which such judgment shall bear interest at the rate provided for in the notes secured by the mortgage. That the judgment is erroneous in the respect referred to is conceded by plaintiff's counsel.

The defendant *Blumer's* cross-complaint against the defendant *Keller* is based upon the breach of the covenants of warranty contained in the deed from *Keller* to *Blumer,* and he prays for judgment against *Keller* for the amount of the judgment of foreclosure. The defendant *Keller* in his answer to the cross-complaint, as will appear from the foregoing statement of facts, alleges mistake, claiming that the warranty deed was executed without his knowledge of the covenants of warranty, and that it was understood that his deed was to be a quitclaim deed and that *Blumer* was to receive a warranty deed from Dahms, and he therefore prays in his answer for a reformation of the deed from *Keller* to *Blumer* in accordance with his understanding at the time of the execution of the deed.

*Keller's* counsel claim that the cross-complaint, alleging a breach of the covenants of warranty and praying for damages on account of such breach, constituted a legal action and not an equitable action, and that pursuant to his

request, timely made, *Keller* was entitled to the trial of such issue by a jury. The issue presented by *Keller*, however, praying for a reformation, constituted an equitable issue which the court proceeded to try without a jury, and it found that *Keller* executed the warranty deed pursuant to his contract with *Blumer*, and thus found against *Keller's* contention of mistake. This clearly established *Keller's* warranty deed to *Blumer*, and entitled *Blumer* to the recovery of damages from *Keller* as a matter of law. No issue of fact as to damages, therefore, was presented, and the court did not commit error in refusing to submit the issue of damages to a jury.

It is further claimed by counsel for *Keller* that under a breach of warranty against incumbrances *Blumer* should have been confined to the recovery of merely nominal damages, and that he would be entitled to actual damages only in the event of an eviction or if he purchased and paid the plaintiff's mortgage. This contention is based upon the ruling of this court in *Estate of Hanlin*, 133 Wis. 140, 113 N. W. 411. While the rule contended for is undoubtedly well fortified by the decisions, under the facts and circumstances of this case the reason for application of the rule does not exist. The doctrine that a cause of action for substantial damages does not accrue to one who has obtained title to property on a warranty deed where a breach of such warranty is made to appear, until he has been evicted or has paid the mortgage, is founded upon the possibility of the mortgagee recovering upon the personal covenant of the mortgagor. In the instant case, however, the reason for this rule does not obtain, for it is conclusively shown that Dahms, the original mortgagor, died insolvent, and that his estate has been distributed in the course of administration proceedings in the county court; therefore the possibility of enforcing payment on the personal covenant of the mortgagor no longer exists.

The doctrine applicable is found in 7 Ruling Case Law, p. 1184, § 107:

"In a number of jurisdictions it has been held that although a covenant against incumbrances, like a covenant of seizin, is broken if at all as soon as made, yet the covenantee can found no right to actual damages on the mere existence of incumbrances, but will be limited to a nominal recovery, unless he has paid off the incumbrance or actually lost the estate in consequence of it.   The above rule is founded on the reason that such covenant is considered as strictly a covenant of indemnity, and that the grantee ought not to recover the value of the incumbrance on a contingency, when he may never be disturbed by it.   This is a reasonable rule; for if he were to recover the value, for example, of an outstanding mortgage, the mortgagee might still resort to the defendant, on his personal obligation, and compel him to pay it, and if the purchaser feels the inconvenience of the existing incumbrance and the hazard of waiting till he is evicted, he may go and satisfy the mortgage, and then resort to his covenants."

In the instant case the possibility of the plaintiff recovering from the mortgagor no longer exists.   The judgment of foreclosure becomes an absolute lien upon the property of the defendant *Blumer*.   The judgment of the trial court is in the nature of an interlocutory decree, and of such decree the defendant *Keller* has no reason, under the facts and circumstances of this case, to complain, for we are of the opinion that had the court granted an absolute judgment such judgment would have been proper.

*By the Court.*—Judgment modified in accordance with the opinion, and, as so modified, affirmed.

ESCHWEILER, J. (*dissenting*).   The two five-year notes of December 12, 1907, and the mortgage securing them were drawn by Durst and held by him continuously thereafter.   He first held them as agent of Johnson until the latter's death in 1912, the notes being then past due.   During

this period the conveyances, Dahms to *Keller* and *Keller* to *Blumer,* were executed.    The mortgages given and. other matters connected with these two conveyances were facts of which Durst had personal knowledge.

On Johnson's death, Durst as executor then held them, but failed to act under sec. 3829, Stats., which declares that such mortgage interest and notes shall be considered as personal assets in his hands and that he may foreclose the same.    Instead of so doing he assigned them, though long past due, to the plaintiff, recording the assignment, but continued possession thereof as her agent until the trial in March, 1922.

No one could have known better than Durst that *Keller* and *Blumer* would not have paid the moneys they did in the manner they did, on their respective purchases, if either knew of the fact that there was then this past-due prior lien.    If Durst had personally owned these, his silence would undoubtedly have barred him from any right to foreclose in equity as against *Keller* or *Blumer.    Hustis v. McWilliams,* 175 Wis. 365, 372, 185 N. W. 159.    His connection with the bank would not have altered this.

If during these transactions *Blumer* or *Keller* had asked Durst the direct question if there be any prior lien against this property and he had said No, there can be little question but that such answer, made while he was in possession as agent for the then owner of such notes and mortgages, would have bound his principal as it would have bound him as an individual.    This also irrespective of his position with another creditor concerned with these transactions and interests, the bank.

Under all the facts and circumstances here shown I think that his silence should be considered the equivalent of a representation that there was no prior obligation, thereby creating an equitable estoppel.

Both as agent and as executor he acted in evident reliance upon the security of Dahms' liability upon the notes rather

than upon the mortgage security; this by treating with Dahms alone; by not communicating with those who would, in the ordinary run of things, take care of it on any purchase of the real estate; and by permitting the notes to run when long past due; by his delay in foreclosing, all to the great injury of *Keller* and *Blumer;* and this is, as I view it, gross laches which should leave his principal barred of this equitable relief.   *Bur v. Bong,* 159 Wis. 498, 150 N. W. 431; *Driscoll v. Tillman,* 165 Wis. 245, 249, 161 N. W. 795.

The following opinion was filed April 8, 1924:

PER CURIAM.   On a motion for a rehearing for appellant, counsel contend that the rule cited from 2 Corp. Jur. 863, in the opinion, is too narrow and limited, and that a principal may be charged with knowledge acquired by the agent, in many instances, while the latter is not acting within the scope of his agency.   This we deem in accordance with the trend of modern decisions.   The rule laid down in this case, however, constitutes an exception to the general rule under which knowledge of an agent who acts in a dual capacity, when the interests are adverse or conflicting, is not chargeable to, or imputed to, the principal, where such knowledge is acquired by the agent while representing such adverse interests.

In the instant case, such dual agency appears from the actual facts disclosed from the evidence.   As herein indicated, the opinion is modified; but such holding does not affect the ultimate results.

The motion for a rehearing is therefore denied, without costs.