MATTSON and others, Respondents, vs. WAGSTAD, Appellant.

*December 8, 1925—January 12, 1926.*

*Partnership: Death of partner: Devolution of interest: Legal representative or heir: Right to accounting: Parties: Nature of partner's interest: Real and personal property: Credits to surviving partner: Advances to deceased partner's widow: Interest: Debts due: Accountant's fees.*

1. Under the Uniform Partnership Act (sec. 123.05, Stats.), both the real estate and personalty of mill property operated by partners prior to and at the time of the death of one of them is partnership property.   p. 573.

2. Under sec. 123.22 of said act, a partner's interest in·the partnership is personal property ·and consists of his share of the profits and surplus; and upon the death of a partner his interest devolves upon his legal representative, who is the executor of his will or the administrator of his estate.   p. 573.

3. Under sec. 123.38 of the act, the right to an accounting of the interest of a deceased partner as against the surviving partner accrues to the administrator as the legal representative of the deceased.   p. 573.

4. In an action for an accounting by the heirs of a deceased partner against the survivor after the allowance of the final account of the administrator and the entry of the final decree, the surviving partner, after bringing in the former administrator as a party and treating him as such administrator, is

not entitled to insist that the administrative agency is *functus officio,* although the proper procedure would have been the appointment of an administrator *de bonis non* under secs. 287.06 and 311.11, Stats. p. 574.

5. Where an accounting was not required by the administrator of the deceased within a year from the death nor before a sale of the partnership property, to permit the administrator, in behalf of the minor children, to elect to require an accounting as of the time of death, under sec. 123.37, Stats., is not an abuse of judicial discretion under the circumstances. p. 576.

6. Though under sub. (3) (e), sec. 123.21, Stats., the partnership property is not subject to allowances to widows, heirs, or next of kin, where the county court required the administrator of the deceased partner to pay a certain sum for the support of the widow and family, which, however, was not done, advances made in good faith by the surviving partner are a proper credit in an accounting. p. 576.

7. Where credit was allowed in an accounting for advances to the widow and family of the deceased partner, interest on such advances is not allowable. p. 576.

8. Where a carload of wheat on hand was included among the assets of the partnership property, the value of wheat previously stored by farmers with the partnership should have been allowed as a credit, although the original record was not produced for inspection. p. 578.

9. So, also, an amount paid to a local accountant for an audit of the books and accounts of the partnership is a proper allowance. p. 578.

10. A credit for an expensive audit, required because of the faulty methods of bookkeeping of the surviving partner, cannot be allowed, notwithstanding such methods were the same as those on which the business had been conducted before the dissolution of the partnership. p. 579.

11. Under the Uniform Partnership Act, interest is required on the balance found due the administrator in the accounting, though interest is not authorized on credit items of the surviving partner, and therefore cannot be allowed. p. 580.

APPEAL from a judgment of the circuit court for Trempealeau county: E. C. HIGBEE, Circuit Judge. *Modified, with directions.*

The defendant and one Richard Mattson formed a copartnership August 31, 1918, then taking over certain real estate, a dam thereon, a flour mill, and a feed business.

In 1910 they had purchased for about $14,000 all of the capital stock of a corporation then the owner, the corporation being dissolved in 1918. They continued operating the business at a profit until the death of Richard Mattson, intestate, on March 20, 1921. The deceased was survived by his widow, *Augusta,* two adult children, such three being plaintiffs here, and eight minor children. ·

Petition for special administration was immediately made, and *E. A. Hegge,* the widow's brother, was appointed special and subsequently, apparently, general administrator. A petition was made for an allowance out of the estate for the maintenance of the family, and on March 25th an order was made by the county judge for $100 per month. Nothing was paid thereon by the administrator. December 24, 1921, the final account was allowed and final judgment entered. This stated that the widow had paid expenses amounting to $476.52, for which it decreed she should have a lien against the share of the heirs. No personal property being shown, an undivided one-tenth share in the mill property was assigned to the children.

A guardian *ad litem* had been appointed for the minor heirs, but he did not appear on such hearing.

The defendant as surviving partner carried on the business and in about the same manner and with about the same imperfect method of bookkeeping as before, and advised with an attorney at law about the matter and apparently acted under his advice. The widow and at least one of the adult children were in or about the mill from time to time.

October 17, 1922, as surviving partner, defendant gave public notice of sale of the entire mill property and assets to be had on October 31st and for the stated purpose of making an adjustment, settlement, and accounting of the former partnership.

October 21, 1922, this action was commenced by the
widow and two adult children of deceased.   The complaint
recited many of the facts above stated;. that the proposed
sale was not advantageous; that the defendant had made
no accounting; that defendant had not proceeded in good
faith.    The prayer was for a receiver; an accounting; a
prohibiting of defendant from further carrying on of the
business, and enjoining the proposed sale.    A temporary
injunction was granted.

Defendant demurred on the one ground that sufficient
facts were not stated.   He also moved in the county court
to have the estate reopened and for further proceedings
therein, but no decision was made on such motion.   After-
wards, November 18th, the demurrer was overruled and the
temporary injunction vacated, and defendant answered.
January 12, 1923, the mill-property business and accounts
were sold for about $14,000.    April 18, 1923, defendant
filed in the county court a certified audit of the partnership
accounts from January 1, 1920, to February 10, 1923, and
presented a cashier's check for the net amount due the
estate of Richard Mattson as stated in such account, of
$1,442.31.   This was not accepted, and objections were filed
to defendant's account and the action sent to W. S. Wad-
leigh, Esq., as referee for hearing.   A guardian *ad litem*
for the minor heirs was appointed in November, 1923.

In April and May, 1924, hearing was had, and the referee
made his findings in September.   Among his findings deemed
material here were the following:

That no inventory of the partnership affairs was presented
by defendant to the estate or demanded on its behalf of
him; that said attorney (who subsequently left the state)
apparently appeared as attorney for the administrator while
acting as defendant's attorney and rendered incompetent
service in both instances; that assets and liabilities of the

partnership at the time of Richard Mattson's death were as follows:

| | | |
|---|---:|---:|
| Cash in banks | $985 | 33 |
| Trade accounts at twenty per cent. discount | 4,323 | 04 |
| Account against R. Mattson | 3,412 | 58 |
| Arbitrary inventory adopted | 300 | 00 |
| Car of wheat | 2,049 | 00 |
| Bank stock | 110 | 00 |
| Real estate, machinery, etc. | 16,000 | 00 |
| Total | $29,179 | 95 |
| Should be | $27,179 | 95 |

(It is conceded that the referee by mistake made this amount $2,000 too much.)

The current liabilities were as follows:

| | | | | |
|---|---:|---:|---:|---:|
| Due defendant as partner | $1,605 | 58 | | |
| Notes payable | 300 | 00 | | |
| Accounts payable—*Mrs. Mattson* | 918 | 00 | | |
| | | | $2,823 | 58 |
| Net worth as erroneously stated | | | $26,356 | 37 |
| Should have been | | | $24,356 | 37 |

That there was furnished during the interim by defendant to the widow and the family of deceased cash and merchandise which, with interest computed on monthly balances, amounted to $2,774.20; that defendant became a creditor between the time of the death and the sale in the further sum of $703.86; that defendant conducted the business for an unreasonable length of time after the death without making an accounting, but that the administrator of the deceased and the adult heirs were negligent in not demanding and securing an earlier winding up of the business; that prior to the death it was conducted at a profit, and at a loss subsequently; that defendant's system of bookkeeping was unsatisfactory, and that sale slips, invoices, and canceled checks were not preserved by him; that there was no showing of any misappropriation of the funds of the partnership by defendant and no bad faith shown on his part in conducting the sale; that the sale was for less than the actual value, but apparently for the best price obtainable;

Mattson v. Wagstad, 188 Wis. 566.

that the net value of the assets at the time of the sale was
as follows:

Total assets, including amount due from R. Mattson... $20,564 68
Liabilities, including $2,309.44 due defendant ......... 5,306 50

    Net value .................................. $15,258 18
   That the cash interests were as follows:
Estate of R. Mattson ..................... $1,442 31
   This item was evidently reached as follows:
One-half share of above net value .................. $7,629 09
   Deduct—
Due firm by R. Mattson at his death .... $3,412 58
Advances to family after death ............ 2,774 20
                         ———— $6,186 78

                         $1,442 31
   The defendant's share was as follows:
One-half of net value .................... $7,629 09
Due him March, 1921 .................... 1,605 58
Subsequent advances .................... 703 86
                         ———— $9,938 53

That at the close of the hearing before the referee the
attorney on behalf of the widow and the adult heirs made
an election to claim from the defendant the share of the
deceased partner in the business as of the time of the death
with interest as provided by the Uniform Partnership Law;
that the special guardian of the minor heirs made a similar
election.

The referee determined as a conclusion of law that the
widow and the adult heirs at law were not entitled to make
such an election and are bound by the action of the surviv-
ing partner in closing the partnership affairs.

In lieu of a further conclusion he certified to the circuit
court the question as to whether the minor heirs of said de-
ceased might make such an election.

Thereafter and before the circuit court motions were
made on behalf of the respective parties to modify such
report; and on behalf of the defendant to be permitted to
make the former administrator, *E. A. Hegge,* the attorney
who had advised with defendant and administrator, and

plaintiffs' attorneys, parties, with a view of counterclaiming as against them for any loss or damage that defendant might have been caused through their actions.

Upon the hearing of the various motions the circuit court held that, having been made a party to the action by defendant, the administrator, with the other plaintiffs, might make such election; that the findings of the referee were sustained except that the amount of $16,000 which the referee determined as the value of the real estate and machinery at the time of the death was reduced to $13,500, the amount considered as having been received for such at the sale.  Thereafter judgment was entered confirming in all things the findings of the referee as corrected as aforesaid and determining that the administrator of the estate was entitled to judgment against the defendant in the sum of $8,765.60, together with interest from March 21, 1921, amounting to $1,935.48, with costs, and directing the payment to the plaintiff and widow of one third and to the several heirs each one fifteenth.

From the judgment so entered defendant *Wagstad* has appealed.

For the appellant there was a brief by *Q. H. Hale* of La Crosse, attorney, and *Linderman, Ramsdell & King* of Eau Claire, of counsel, and oral argument by *G. O. Linderman*.

For the respondents there was a brief by *Ole J. Eggum* of Whitehall, attorney for the adult plaintiffs, *H. A. Anderson* of Whitehall, attorney for the minors, and *John C. Gaveney* of Arcadia, attorney for *E. A. Hegge*, interpleaded defendant; and the cause was argued orally by *Mr. Eggum*.

Eschweiler, J.    Were it our duty or disposition to be strict in adherence to rules of procedure there would be many grounds easily found and pointed out supporting an entire reversal of this judgment, instead of the modification

Mattson v. Wagstad, 188 Wis. 566.

thereof we have determined to make. There has been here a long and expensive trial; a want of the proper party in the first instance, namely, the legal representative of deceased, the administrator of his estate; an improper handling and closing of the estate; and a costly reliance upon the incompetent advice and services of an attorney at law. It is proper here to state, although perhaps unnecessary, that such attorney took no part in the hearing or proceedings below and has no present connection with the matter. Many minors are concerned: the fund out of which payments to them are to be ultimately made would be considerably lessened if further litigation be had; and we therefore deem it best for all concerned to end this matter even though the exact justice may not now be reached, such as, if proper proceedings had been taken, might have resulted.

(1) The mill property, both real estate and personalty, prior to and at the time of the death of Richard Mattson, under our Uniform Partnership Act was partnership property. Sec. 123.05, Stats. The title to such property is of a different class and with characteristics quite distinct from that of the title to property owned and held by individuals. A partner's interest in the partnership is personal property and consists of his share of the profits and surplus. Sec. 123.22, Stats.

(2) Upon the death of Richard Mattson his interest, being personal property, devolved upon his legal representative. The executor of a will or administrator of an estate is such legal representative. *Moyer v. Oshkosh,* 151 Wis. 586, 592, 139 N. W. 378; *Alexander v. McPeck,* 189 Mass. 34, 42, 75 N. E. 88; *Rockland-Rockport L. Co. v. Leary,* 203 N. Y. 469, 482, 97 N. E. 43; 2 Bouvier, Law Dict. 1911; 3 Words & Phrases (2d ser.) 72.

(3) By express provision of the Uniform Partnership Act, sec. 123.38, Stats., the right to an account for this interest as against a surviving partner such as defendant here

accrued to the administrator, the legal representative of the deceased. The same conclusion would have to be reached were there no such express statute, for, the interest being considered as personal property, it is, under well settled law, the administrator, acting as trustee, who should take any necessary and proper legal steps to preserve and collect this interest or property rather than those ultimately getting title to the surplus after administration and by final decree. *Pietraszwicz v. Pietraszwicz,* 173 Wis. 523, 181 N. W. 722; *Estate of Johnson,* 175 Wis. 248, 252, 185 N. W. 180; *State ex rel. Peterson v. Circuit Court,* 177 Wis. 548, 554, 188 N. W. 645; *Johnson v. Blumer,* 183 Wis. 369, 375, 197 N. W. 340, 198 N. W. 277; *Estate of Arneberg,* 184 Wis. 570, 577, 200 N. W. 557; *Schoenwetter v. Schoenwetter,* 164 Wis. 131, 134, 159 N. W. 737. And yet this action, by the widow and adult heirs only, was not commenced until nearly a year after a final decree had been entered in the probate proceedings assigning the mill property as real estate and allowing the final account of the administrator. The former administrator was not a party until after the hearing before the referee and was then brought in as defendant on application of the appellant, and when judgment is finally entered it is nominally in favor of the administrator for the amount declared due from appellant. The appellant, however, having elected by his application, after hearing, to bring in other parties and then and there treating *Hegge* as presently the administrator, cannot very well now raise a question, which seems quite prominent in the record, namely, whether, after the allowance of a final account and the entry of a final decree as was shown to have been done here in the matter of the estate of Richard Mattson, *Hegge* can continue to be an administrator thereafter, or whether his administrative agency is not *functus officio.* Undoubtedly it would have been far more advisable to have had *Mr. Hegge* or someone else appointed administrator *de bonis*

*non* under sec. 3814 (now sec. 311.11) and sec. 3257 (now sec. 287.06), Stats.

(4) An important question is here presented as to whether the defendant, as surviving partner, accounting as he must as trustee to the legal representative of a deceased partner (sec. 123.18, Stats.), shall account for the value of the interest of the deceased partner in the partnership property as of the time of its dissolution by the death in March, 1921, with interest from such date, or as of the condition of the business when it was finally wound up after the sale in January, 1923. This question is to be determined under the provisions of sec. 123.37, Stats., providing, in substance, that when any partner dies and the business is continued by the surviving partner without any settlement of accounts, unless otherwise agreed, the legal representative of such deceased partner may have the value of the interest at the date of the dissolution ascertained as against such surviving partner and receive as an ordinary creditor an amount equal to such value with interest.

The referee certified to the circuit court the question, so far as the minors were concerned, whether or not there could be asserted, at a time much more than a year after the time of the death and even after the sale had been made of the partnership property, an option under such statute to have the accounting as of the date of the death, having first reached the conclusion that the adult heirs had lost such option by their neglect and that of the administrator. The circuit court disposed of this question by permitting the former administrator, then made a party defendant as above recited, to exercise such option as the legal representative of the estate acting with the plaintiffs.

We find great difficulty in satisfying ourselves that the result so reached should be confirmed. However, in view of all the conditions and circumstances in this unfortunate mix-up, and there being so many minor children whose

ultimate rights and interests were so long neglected, we are not prepared to say, assuming *Mr. Hegge,* the former administrator, is properly before the court as administrator with power to act on behalf of the estate, that it should be considered an abuse of judicial discretion to permit him to declare such an election at such late date, and we will not therefore make any change in that regard.

On the primary question involved, viz. how much must the defendant, as surviving partner, account for to the estate of his deceased partner, we have reached the conclusion that several errors were committed to the prejudice of appellant in the statement of the account.

(5) The county court promptly after the death of Richard Mattson made an order requiring the administrator to pay $100 per month for the support of the widow and the family. No question is raised here but that such was a reasonable allowance. Nothing was paid by the administrator out of any fund coming into his hands. The partnership property as such, by sub. (3) (e), sec. 123.21, Stats., is not subject to allowances to widows, heirs, or next of kin. Nevertheless, in unquestioned good faith, the defendant did advance from time to time substantial amounts in cash and merchandise to the widow and the family. Credit for such amount was allowed by the referee but refused by the circuit court. We think the plainest principles of justice require that when the defendant is held to account to the estate he should be credited with the amount so in good faith advanced by him for the family support. We can see no justification for allowing the widow and the family to receive this money from the defendant twice, as would be the effect of the judgment below.

(6) The amount of such advances was found by the referee to be $2,774.20. This includes, however, as an inspection of the account discloses, $167.14 computed as interest on monthly balances. There is no foundation for

the allowance of such interest and it should be deducted, leaving $2,607.06 to be allowed appellant.

(7) Just before the death of Richard Mattson a carload of wheat was received at the mill valued at $2,049 and was included as one of the items of the assets of the partnership in March, 1921. As against this item defendant testified that there should be deducted $1,386.80, represented by the amount of wheat of that value for which the partnership was indebted to various farmers prior to March, 1921, for wheat that had been previously stored with the partnership by such farmers. At the hearing he presented and read from a slip showing the names of such customers and the respective amounts, and testified that such list had been prepared by him from the original book of entries, which he did not produce at the trial, it being at his new place of business in another town. Objection was interposed on the ground that the slip he presented was not the best evidence and because it appeared there was an original book of entries. The referee ruled that such was not the best evidence and that the objection should be sustained, but added: "I want this record, and it may be read into the record, and counsel may demand, if they so see fit, the production of the original record if they wish the court to consider it." Such list was then read into the record. Such claimed credit of $1,386.80 was totally disallowed by the referee and by the circuit court, and this, we think, was improper. Defendant was very careless in the manner in which he, as trustee, kept the accounts, even though it appears that the methods that had been in existence for years before in the conduct of the partnership affairs were continued. We find nothing in the record to impeach the good faith of appellant and there is an express finding that no fraud on his part was shown. His testimony, being in the record, shows that there were such amounts of wheat due the farmers, and it does not seem just that in an ac-

counting of this kind the defendant should not be allowed for what is clearly an honest credit. While it is true that he should have produced the original book of entry, yet its production could have been insisted upon and compelled by opposing counsel, and it undoubtedly would have disclosed, if such were the fact, that the defendant was mistaken or falsifying in his testimony. Apparently neither counsel took further steps as to producing such original record, and we are not prepared to penalize the defendant by refusing him credit for an item supported by sworn testimony and against which was apparently held below as its sole discredit that the original record was not produced for inspection. The referee might properly have refused to receive his testimony in regard to this matter in advance of his producing the original record, but having permitted such testimony to be given we do not deem it equitable to disregard it, and appellant is therefore entitled to an additional credit of such $1,386.80.

(8) Defendant had two audits made of the books and accounts of the partnership: For one such he paid $15 to a local accountant. He employed a certified accountant, who made a very full audit covering the period from January 1, 1920, to February 10, 1923, after the sale, and was paid $746.88 for such. Both of these bills were disallowed. The item of $15 for the services of the one accountant should have been allowed. We cannot, however, change the result reached in the court below as to the other and very substantial bill for the auditing. It is evident that much of the services included in such bill were rendered necessary by the faulty methods used by the defendant in keeping books of account; and while he undoubtedly acted in good faith in the matter and under the advice of an attorney, yet he did not in that regard measure up to what must be expected of one who assumes the relationship of trustee towards others interested in carrying on as surviving

partner such a business. The expense was incurred without request by or consent of the other parties interested, directly or indirectly, in the business, and, defendant having assumed such responsibility and largely for his individual interests, we do not feel warranted in placing the burden for the same in whole or in part upon the other interested parties.

(9) The referee determined the value of the real estate, machinery, etc., at the sum of $16,000 as of the time of the death. On review by the circuit court that amount was reduced to the amount received at the sale in January, 1923, for such items, estimated by the circuit court at the sum of $13,500,—such amount of $13,500 being but $1,500 more than the value claimed by defendant in his motion to modify the referee's report. For want of satisfactory evidence in the record requiring us to find otherwise, we confirm the amount as fixed by the circuit court.

As was properly suggested by the referee, the unfortunate condition of the books, accounts, and records has made it impossible to arrive at the exact condition of the partnership property and business. Future litigation could not clear up the confusion and would result in substantial depletion of the funds. We consider that it will be coming nearer to doing justice by now finally disposing of it than by sending it back for further proceedings.

(10) We therefore restate the account as follows:

*Assets March 20, 1921.*

| | | |
|---|---|---|
| Cash in banks | $985 | 33 |
| Trade accounts, face $4,903.80, less 20 % | 4,323 | 04 |
| Liability of R. Mattson to firm | 3,412 | 58 |
| Inventory | 300 | 00 |
| Car of wheat | 2,049 | 00 |
| Bank stock | 110 | 00 |
| Real estate and machinery (as fixed by circuit court) | 13,500 | 00 |
| | $24,679 | 95 |

Mattson v. Wagstad, 188 Wis. 566.

*Liabilities March, 1921.*

| | | |
|---|---:|---:|
| Due defendant ......................... | $1,605 58 | |
| Notes payable ......................... | 300 00 | |
| Account Mrs. M. Mattson ............... | 918 00 | |
| Due farmers for wheat ................. | 1,386 80 | |
| | | $4,210 38 |
| Net worth ...................... | | $20,469 57 |
| Final balance after sale: | | |
| Net worth above ...................... | | $20,469 57 |
| Deduct further credit to defendant ....... | $703 86 | |
| Deduct for audit ...................... | 15 00 | |
| | | 718 86 |
| | | $19,750 71 |
| One half thereof, R. Mattson estate ...... | | $9,875 35 |
| From which is to be deducted: | | |
| Due to partnership ..................... | $3,412 58 | |
| Allowance to family ................... | 2,607 06 | |
| | | 6,019 64 |
| Final balance ................... | | $3,855 71 |

For this amount of $3,855.71, with interest from March 20, 1921, judgment should go in favor of the administrator of the estate of Richard Mattson, to be accounted for by him in the county court and to be there distributed.

We appreciate the seeming hardship in allowing interest on this balance due the estate while denying to defendant the benefit of interest on his credit items, but the provisions of the Uniform Partnership Act cited above expressly require it as to the former item, and we find no authority, statutory or otherwise, that would permit it as to the latter.

*By the Court.*—Judgment to be modified in the court below as herein directed. Defendant to have costs here.